IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,    )
    )
    Plaintiff,    )
    )
    v.    )    No. 3:11-CR-69
    )
MERRELL NEAL,    )    (PHILLIPS/SHIRLEY)
MICHAEL NEAL, and    )
BRANDON SCOTT HARRIS,    )
    )
    Defendants.    )

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C.

§ 636(b) for disposition or report and recommendation regarding disposition by the District Court

as may be appropriate. This case is before the Court on three motions seeking the suppression of

evidence in this case: Defendant Michael Neal's Motion to Suppress [Doc. 45] and Defendant

Merrell Neal's Motion to Suppress Evidence Obtained as a Result of Insufficient Search Warrant

[Doc. 49] and Motion to Suppress Evidence and for a Franks Hearing [Doc. 50], all of which were

filed on August 15, 2011. Defendant Brandon Harris has moved [Doc. 53] to join in all of these

motions, and Defendant Michael Neal has moved [Doc. 54] to join in the motions by Defendant

Merrell Neal. The Government responded [Docs. 55 and 56] to these motions on August 29, 2011.

The parties appeared for a hearing on the motions on September 8, 2011. Assistant United

States Attorney Tracy L. Stone appeared on behalf of the Government. Attorney Jonathan A.

1

Moffatt[1] represented Defendant Merrell Neal.  Attorney Mike Whalen appeared on behalf of Defendant Michael Neal, and Attorney Russell T. Greene represented Defendant Brandon Scott Harris.  All three Defendants were also present at the hearing.  The Court **GRANTED** the motions to adopt [**Docs. 53 and 54**] at the hearing.  At the conclusion of the hearing, the Court permitted the parties to file post-hearing briefs.  The Defendants [Doc. 62], filing jointly, and the Government [Doc. 63] submitted their supplemental briefs on September 22, 2011.  The Court took the motions under advisement on the following day.  The transcript [Doc. 69] of the suppression hearing was filed on January 9, 2012.

## I. POSITIONS OF THE PARTIES

The Defendants are charged in a fourteen-count First Superseding Indictment [Doc. 42] as follows: All three Defendants are charged with conspiracy to distribute cocaine and crack from March 27 to May 21, 2011 (Count 1) and with possession of cocaine with intent to distribute on May 21, 2011 (Count 6).  Defendants Merrell and Michael Neal are also jointly charged with two counts of possession of cocaine with intent to distribute (Counts 3 and 4) and two counts of possession of a firearm in furtherance of drug trafficking (Counts 2 and 5).  Defendant Michael Neal is charged with possession of crack cocaine with intent to distribute on May 21, 2011 (Count 7), maintaining a residence for drug distribution (Count 8), and possession of a firearm on May 21, 2011, in furtherance of drug trafficking (Count 9).  Defendant Brandon Harris is charged in Count 11 with possession of a firearm on May 21, 2011, in furtherance of drug trafficking.  Finally, Defendant

_____

[1]The Court substituted [Doc. 68] Attorney Christopher J. Oldham as Defendant Merrell Neal's counsel of record on December 14, 2011.

2

Merrell Neal is charged with possession of a firearm in furtherance of a drug trafficking crime on May 21, 2011, in Count 10 and with being a felon in possession of firearms in Counts 12 through 14.

The Defendants' suppression motions arise out of the May 21, 2011 search of Defendant Michael Neal's residence on Beaman Street, in Knoxville, Tennessee, pursuant to a search warrant. The Defendants argue that the affidavit in support of the search warrant does not provide probable cause for the search warrant's issuance because it does not establish the reliability or credibility of the confidential informant and it does not show that law enforcement corroborated the information from the confidential informant. The Defendants also contend that the search warrant affidavit contains material inaccuracies and omissions that, when considered, eliminate probable cause to issue the search warrant. Finally, the Defendants assert that the good faith exception to the warrant requirement does not serve to save the search of the residence because law enforcement misled the issuing judge by including material false statements in the affidavit and omitting material information that pertained to the reliability of the confidential informant.

The Government responds that the search warrant affidavit provides probable cause for the issuance of the search warrant to search the Beaman Street residence and that it does not contain material falsehoods or omissions. Alternatively, the Government contends that the exclusionary rule should not be applied in this case because the officers acted in good faith in seeking and executing the search warrant.

3

## II.  BACKGROUND

On May 21, 2011, Federal Bureau of Investigation (FBI) Special Agent Mickey R. Nocera executed an affidavit in support of a search warrant for a house at 637 Beaman Street, Knoxville, Tennessee.  The undersigned issued a search warrant for the Beaman Street residence.  The search warrant was executed that same morning.

## III. ANALYSIS

The Fourth Amendment requires that "[n]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."  U.S. Const. amend. IV.  The Defendants argue that their rights under the Fourth Amendment were violated because the search warrant for the Beaman Street residence was not supported by probable cause.  They also contend that the affiant included material, false information in the affidavit and omitted material information from the affidavit.  The Defendants maintain that if the material, false information was omitted and the material omissions included, the affidavit would not have provided probable cause for the issuance of the search warrant.  They request an evidentiary hearing, pursuant to Franks v. Delaware, 438 U.S. 154, 155, 164 (1978), in order to prove that Agent Nocera included material false statements and omissions in the affidavit with reckless disregard for the truth.  Finally, the Defendants argue that the executing officers were not acting in good faith reliance on the search warrant and that, thus, the exclusionary rule applies in this case.  The Court will consider each of this issues, along with the Defendants' standing to challenge the search, in turn.

4

## A. Standing

As an initial matter, the Court must determine whether the Defendants have a recognized privacy interest in 637 Beaman Street or what is commonly known as "standing" to contest the search.  See United States v. Ellis, 125 F. App'x 691, 696 (6th Cir. 2005) (holding that it is "incumbent" upon the court to determine whether a party has "standing to challenge the constitutionality of the officers' actions[,]" even when the issue of standing is not raised by the parties).  In order to contest whether a search comports with the Fourth Amendment, the defendant must have "a reasonable expectation of privacy" in the location searched.  Rakas v. Illinois, 439 U.S. 128, 143 (1978).  "It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched."  United States v. Talley, 275 F.3d 560, 563 (6th Cir. 2001).  Whether the defendant enjoys a reasonable expectation of privacy does not turn solely upon the defendant's subjective belief but also depends upon (1) the defendant's interest in and control of the place searched, (2) any measures the defendant took to ensure privacy, and (3) whether society recognizes the defendant's expectation as reasonable.  United States v. Padin, 787 F.2d 1071, 1075-76 (6th Cir.), cert. denied, 479 U.S. 823 (1986).

The Court finds that Michael Neal had a reasonable expectation of privacy in the Beaman Street house.  The affidavit [Exh. 1, ¶8.a.] states that the utilities for this house were in Michael Neal's name.  This indicates that Michael Neal had some interest in and control over the Beaman Street house, even though it was likely not his primary residence.[2]  Defendants Merrell Neal and

---

[2]The affidavit in support of the search warrant states that a different address was listed as Michael Neal's home address in his driver's license records and that the confidential source indicated that the Beaman Street house "did not appear to be lived in because it had few

5

Brandon Harris, however, are not similarly situated.  There is no indication that they were residents of 637 Beaman Street or had any type of ownership interest therein.

Defendant Merrell Neal argues that he has an expectation of privacy in the residence because he is the brother of Michael Neal and had recently been an overnight guest.  An overnight social guest has a reasonable expectation of privacy in another's home where he or she is staying because people naturally seek a secure and private place to sleep when they are away from their own home. Minnesota v. Olson, 495 U.S. 91, 98-99 (1990).  In contrast, the Supreme Court has held that individuals in a business acquaintance's apartment for the first time to package cocaine for resale for two and one-half hours were not the equivalent of overnight guests and did not have a legitimate expectation of privacy in the apartment.  Minnesota v. Carter, 525 U.S. 83, 89 (1998).  The Supreme Court provided the following guidance in Carter:

> Respondents here were obviously not overnight guests, but were essentially present for a business transaction and were only in the home a matter of hours.  There is no suggestion that they had a previous relationship with Thompson [the lessee], or that there was any other purpose to their visit.  Nor was there anything similar to the overnight guest relationship in Olson to suggest a degree of acceptance into the household.  While the apartment was a dwelling place for Thompson, it was for these respondents simply a place to do business.
>
> . . . .
>
> If we regard the overnight guest in Minnesota v. Olson as typifying those who may claim the protection of the Fourth Amendment in the home of another, and one merely "legitimately on the premises" as typifying those who may not do so, the present case is obviously somewhere in between. But the purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection

furnishings and little food." [Exh. 1, ¶¶ 7.c. & 8.b.]

between respondents and the householder, all lead us to conclude that respondents' situation is closer to that of one simply permitted on the premises. We therefore hold that any search which may have occurred did not violate their Fourth Amendment rights.

Id. at 90-91.

Merrell Neal's situation falls somewhere between the overnight guest in Olson and the business invitee in Carter. On the one hand, Merrell Neal is Michael Neal's brother and, thus, had a previous relationship with the person in control of the house. Also, the affidavit reveals that Merrell Neal came to the Beaman Street residence on at least two prior occasions. [Exh. 1, ¶¶ 7.b. & 7.d] However, the information from the confidential source [Exh. 1, ¶7.b. and 7.d.] was that Merrell Neal would drive to the Beaman Street residence, process and sell cocaine with Michael Neal through the night and next morning, and then drive directly back to Chicago. This reveals that Merrell Neal came to the Beaman Street house for purely commercial purposes, rather than acting as an overnight guest. Although Merrell Neal was at the Beaman Street house for longer than two and one-half hours, the affidavit indicates that he was there for less than a full day on both prior occasions. Thus, like the Supreme Court in Carter, the Court finds that for Merrell Neal, the Beaman Street house was "simply a place to do business." Id. at 90. Finally, the Court notes that the Defendant offers no proof to contradict this finding.

In United States v. Pollard, the Sixth Circuit examined the standing of two defendants in another's home conducting a cocaine transaction. 215 F.3d 643, 647 (6th Cir. 2000). After reviewing the privacy interests of overnight guests from Olson and business invitees from Carter, the appellate court determined that Defendant Pollard had standing to contest the search because he had been a friend of the lessee for seven years, had been staying in the home from time to time and

7

earlier that same week, kept some clothing at the residence, ate meals with the family in the residence on occasion, and was allowed to stay at the residence even when the family was not there. Id. at 647-48. However, the court held that Defendant Rodriguez, who had never been to the residence before, did not know the lessee, did not bring any personal belongings or luggage to the house, and was returning to his home in another state immediately after the drug transaction, did not have a legitimate privacy interest in the residence to challenge the search. Id. at 648. In weighing these factors in the instant case, the Court finds that Defendant Merrell Neal does not have a legitimate privacy interest in the Beaman Street house. While like Pollard, he has a relationship with the person in control of the premises, nothing in the record indicates that he was staying at the residence as a social guest–no record of prior overnight stays at the premises, no belongings at the house, and no luggage with him other than the cocaine he brought. Accordingly, despite the singular fact that Merrell Neal and Micheal Neal are brothers, the remainder of the evidence before the Court shows that Merrell Neal was at the Beaman Street house for a purely commercial purpose. See id.; see also United States v. Buckner 717 F.2d 297, 300 (6th Cir. 1983) (concluding that the defendant's relationship with the apartment lessee alone did not provide standing to contest the search of his mother's apartment); cf., United States v. Heath, 259 F.3d 522, 533 (6th Cir. 2001) (determining that defendant had standing to contest the search of his cousin's apartment, because in addition to the familial relationship, the defendant had stayed there weekly for two years and had a key and "unfettered access" to the apartment).

Defendant Brandon Harris has even less of a privacy interest in the Beaman Street house than Defendant Merrell Neal, as the information in the affidavit supporting the criminal complaint [Doc. 1] does not suggest that Harris had ever been to the residence before May 20 and 21, when he rode

8

with Merrell Neal and the confidential source from Chicago to Knoxville. Moreover, there is no indication that he had ever met Michael Neal before or that he had any personal belongings or luggage with him on the trip. Thus, Defendant Harris, like Rodriguez in <u>Pollard</u>, has no standing to challenge the search. <u>See</u> 215 F.3d at 648.

Accordingly, the Court finds that Defendants Merrell Neal and Brandon Harris lack standing to contest the search of the Beaman Street house. Nevertheless, the Court also observes that the Government did not object to either Defendant's standing to contest the search, even though Defendant Merrell Neal raised the issue of standing in his motion. In light of this fact, the Court will also address Defendant Merrell Neal's arguments[3] for suppression of the evidence, in the event that the District Court disagrees that Defendants Merrell Neal and Brandon Harris lack a legitimate privacy interest in the premises.

## B. Probable Cause

The Defendants contend that the search warrant for the residence at 637 Beaman Street is invalid because the supporting affidavit does not provide probable cause for its issuance. They argue that probable cause is based exclusively upon information from the confidential source, yet the affidavit fails to show that the confidential source is credible or reliable. Additionally, they assert that the officers failed to corroborate the information from the confidential source. Given the confidential source's stated interest in providing information to the police (to assist a third party with existing criminal charges), they argue that the information from the confidential source must be

---

[3]The Court notes that Defendant Brandon Harris makes no separate arguments for suppression but, instead, joins in the arguments of his codefendants.

9

disregarded and that, in the absence of this information, there is no basis to issue the search warrant.

As set out above, the Fourth Amendment requires probable cause for the issuance of a search warrant. Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). To make such a showing "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 244 n.13. Thus, the Supreme Court has observed that

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162, . . . (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176, . . . (1949).

Texas v. Brown, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. Gates, 462 U.S. at 238.

The issuing judge's determination that probable cause exists is entitled to "'great deference.'" United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (quoting Gates, 462 U.S. at 236). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. Id. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id. at 238-39. In making this determination, the

Court considers only the information that was before the issuing judge–in other words, only what is contained within the four corners of the supporting affidavit. United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973); see also Whiteley v. Warden, 401 U.S. 560, 565 (1971).

Probable cause for the issuance of a search warrant may be gleaned from information provided by a confidential source but, in such cases, the issuing judge must have a basis for finding that the source is reliable or credible and was in a position to know the information provided, as part of the totality of the circumstances analysis. United States v. Dyer, 580 F.3d 386, 390 (6th Cir. 2009); see also Gates, 462 U.S. at 233 (holding that a confidential informant's reliability and basis of knowledge are "relevant considerations in the totality-of-the-circumstances analysis"); Allen, 211 F.3d at 972-73. An informant's veracity or reliability and basis of knowledge are not rigid categories. Id. Instead, deficiencies in one aspect can be made up by a strong showing in another. Gates, 462 U.S. at 232-33; Allen, 211 F.2d at 981. Additionally, information provided by a confidential informant can be independently corroborated by law enforcement. United States v. Jones, 159 F.3d 969, 974 (6th Cir. 1998). This independent police corroboration must be "substantial." United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005). Police do not necessarily have to corroborate the criminal conduct observed by the informant; instead, corroboration of unincriminating facts can be sufficient to establish probable cause. Gates, 462 U.S. at 243-44. "It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" Id. at 244-45 (quoting Jones v. United States, 362 U.S. 257, 269, 271 (1960)).

In the instant case, the confidential source had a first hand or eyewitness basis of knowledge

as to Merrell Neal's trips from Chicago to the Beaman Street house in Knoxville to process and sell cocaine, because the confidential source had accompanied Neal on two such trips in the recent past. The affidavit relates [Exh. 1, ¶7.a.] that Merrell Neat offered to pay the confidential source $500 to travel with him to Knoxville and back, because Neal believed that a couple traveling together would appear less suspicious to police. The confidential source described [Exh. 1, ¶7] making two trips to the Beaman Street house in Knoxville with Merrell Neal on April 1 and April 9, 2011. Both trips contained the following similarities, witnessed or experienced by the confidential source: Merrell Neal drove a rental car; he entered "800 Beaman Street, Knoxville, Tennessee" into a GPS navigation system each time; he kept a handgun in the center console of the car; they drove through the night arriving at the house in the early morning hours; they parked in the driveway and entered the house through the back or side door after Merrell Neal retrieved a duffel bag from the trunk of the car; they met Michael Neal inside the house and the two brothers immediately began to break down and repackage multiple bricks of cocaine wrapped in black plastic secured with silver tape; the Neal brothers also cooked a portion of the cocaine to make crack; six to eight customers arrived over several hours and purchased much of the cocaine and crack; and Merrell Neal took a portion of the cash generated from the drug sales back to Chicago. The Court finds that the detail available in these two accounts, including the specific description of a house hundreds of miles away from Chicago, the number of bricks of cocaine brought each time, and the specific amounts of money from drug sales given for the April 9 trip, supports the confidential source's first hand basis of knowledge.

The Court also finds that the confidential source reported beginning a third trip to Knoxville with Merrell Neal on May 20, 2011. [Exh. 1, ¶12] The source sent a text message to an FBI agent

on May 21, 2011, at 12:05 a.m., giving the location of the car, and agents maintained electronic surveillance of the source's telephone during the trip to Knoxville. [Exh. 1, ¶12] This information in the affidavit also reveals that the confidential source had a first-hand basis of knowledge as the source was reporting the event as it occurred.

The reliability of a confidential source can be demonstrated, at least in part, by prior occasions on which the informant has provided reliable information, see United States v. Ferguson, 252 F. App'x 714, 721 (6th Cir. 2007), but no such prior occasions are alleged in the instant affidavit. Instead, the affidavit states [Exh. 1, ¶7] that the confidential source approached the FBI in Chicago and provided the information in order to benefit a third party with existing criminal charges. The affidavit also reveals that the confidential informant admitted to participating in criminal activity in accompanying Merrell Neal on the two prior trips to Knoxville to process and deal cocaine.

Nevertheless, the confidential source's reliability is supported by the fact that the investigating agents knew her[4] identity, even though it was unknown to the issuing judge: "The statements of an informant . . ., whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source." United States v. May, 399 F.3d 817, 824-25 (6th Cir. 2005); see also Dyer, 580 F.3d at 391 (determining that the affidavit showed the reliability of the informant because the informant's identity was known to the police, even though it was not given in the affidavit or known to the issuing magistrate judge). In the instant case, the affidavit does not name the confidential source, but it shows [Exh. 1, ¶9] that she met with law enforcement officers and identified a picture

---

[4]The affidavit identifies the confidential source as being female.

13

of the Beaman Street house. Additionally, the level of detail provided in the confidential source's accounts of the trips on April 1 and April 9 support a finding that the source is reliable. See United States v. Gunter, 551 F.3d 472, 480 (6th Cir. 2008) (considering as a factor supporting the informant's reliability that he provided detailed information of ongoing drug sales); United States v. McCraven, 401 F.3d 693, 697 (6th Cir. 2005) (determining that "a detailed description of what the informant observed first-hand" is another "indicia of the informant's reliability").

Moreover, the affidavit contained independent police corroboration of some of the information provided by the confidential source, upon which the issuing judge could base a finding that the source is reliable. The affiant was able to locate a house on Beaman Street that had green paint, a carport, and "junk" in the backyard, thereby matching the description given by the confidential source. [Exh. 1, ¶8.a.] The affiant checked utility records for this house and learned that the utilities were in Michael Neal's name and that Michael Neal's telephone number matched the telephone number given to the confidential source for Michael Neal. [Exh. 1, ¶8.a.] Through Tennessee Department of Safety records, the affiant confirmed that Michael Neal owns a green Infiniti Q45 sedan, which is the vehicle the confidential source described as Michael Neal's vehicle. [Exh. 1, ¶¶7.g. & 8.b.] During surveillance of the Beaman Street house, FBI agents routinely observed an Infiniti resembling the one registered to Michael Neal parked at the house. [Exh. 1, ¶10] The affiant relates that both Michael and Merrell Neal have felony cocaine convictions. [Exh. 1, ¶8.c.-d.] The affidavit states that agents in Chicago met with the confidential source, and the source identified the Beaman Street house in a photograph, after she realized that she had entered the house through the side door. [Exh. 1, ¶9] Finally, during surveillance, FBI agents observed a large number of visitors to the house. [Exh. 1, ¶10] The affiant stated that based upon his training and

14

experience, a large number of visitors to a house that did not appear to be used as a residence is an indication that the house is being used for drug trafficking. [Exh. 1, ¶10] The Court finds that this investigation by law enforcement corroborated some of the information provided by the confidential source, particularly the location of the house and the involvement of Michael Neal.

Moreover, the police also corroborated details from the confidential source regarding the two previous trips to Knoxville by tracking her, via electronic surveillance, as she traveled from Chicago to Knoxville on May 20, 2011. [Exh. 1, ¶12] On May 20, 2011, the confidential source told FBI agents, while Merrell Neal was away from the car, that she was on the road to Knoxville with Merrell Neal in a blue Chevrolet Impala. [Exh. 1, ¶12] Agents were able to track the confidential informant's cellular telephone as she traveled south through Kentucky. [Exh. 1, ¶12] Via electronic surveillance, agents learned that her cellular telephone was located near Clinton, Tennessee, at 4:55 a.m. on May 21, 2011. [Exh. 1, ¶12] Officers spotted a blue Chevrolet Impala with Illinois license plates south of Clinton and traveling south at 5:00 a.m. [Exh. 1, ¶12] A check of the license plate number revealed the car was registered to Merrell Neal. [Exh. 1, ¶12] Officers spotted a blue Chevrolet Impala arriving at 637 Beaman Street at 5:20 a.m. [Exh. 1, ¶12] Officers observed a driver and a passenger exit the car and enter the house, after the driver retrieved a bag from the trunk. [Exh. 1, ¶12] The Court finds that this electronic surveillance and these observations by the officers corroborate aspects of the two prior trips and solidly link the drug trafficking to 637 Beaman Street.

The Defendants argue that the investigation by law enforcement described above corroborates only innocent information, not the confidential informant's account of criminal activity, and, thus, does not show the confidential source to be reliable. As discussed earlier, law enforcement does not have to corroborate criminal activity in order to provide probable cause. See Gates, 462 U.S. at 243-

15

45 & n.13. In fact, the Supreme Court rejected this very argument in the seminal probable cause case

of Illinois v. Gates:

> The Illinois Supreme Court thought that the verification of details contained in the anonymous letter in this case amounted only to "the corroboration of innocent activity," J.A. 12a, and that this was insufficient to support a finding of probable cause. We are inclined to agree, however, with the observation of Justice Moran in his dissenting opinion that "In this case, just as in Draper[ v. United States, 538 U.S. 307, 309 (1959)], seemingly innocent activity became suspicious in the light of the initial tip." J.A. 18a. And it bears noting that all of the corroborating detail established in Draper, *supra*, was of entirely innocent activity-a fact later pointed out by the Court in both Jones v. United States, 362 U.S. 257, 269-270 . . . (1960), and Ker v. California, 374 U.S. 23, 36 . . . (1963).
>
> This is perfectly reasonable. As discussed previously, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands. We think the Illinois court attempted a too rigid classification of the types of conduct that may be relied upon in seeking to demonstrate probable cause. See Brown v. Texas, 443 U.S. 47, 52, n. 2 . . . (1979). In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.

Id. at 243 n.13. In this case, the Court finds that the degree of suspicion attached to the information

and acts corroborated by the police, particularly the May 20-21 trip to Knoxville, is high.

Accordingly, based upon the confidential source's identity being known to the police, the

level of detail in her accounts of the trips from Chicago to the Beaman Street residence, and police

corroboration of some of the details provided by the confidential source, the Court finds that the

confidential source is reliable. The Court also finds that the confidential source had a firsthand basis

16

of knowledge. Thus, the information from the confidential source can and does support a probable cause finding in this case.

### C.  Material Falsehood or Omission

Defendants Michael and Merrell Neal[5] also argue that the affidavit in support of the search warrant for Michael Neal's house contains material false statements and omissions by the affiant. They contend that if the false statements are removed from the affidavit or if the omissions are considered, the affidavit does not provide probable cause for the issuance of the search warrant. They allege that the affidavit contains the following false information: (1) The dates on which the two prior trips to Knoxville occurred, (2) the reason why the confidential informant accompanied Merrell Neal to Knoxville, (3) that Merrell Neal kept a handgun in the console of the car during both of the prior trips, (4) that the confidential informant positively identified the Beaman Street house from photographs, (5) the amount of cocaine Merrell Neal allegedly brought to Knoxville on the two prior trips, (6) the amount of money gained from the sale of drugs in the two prior trips, and (7) the statement that the confidential informant is "highly credible."[6] They also contend that the affidavit

_____

[5]Although the Court found that Defendant Merrell Neal lacks standing to challenge the search of Michael Neal's home, the Court will consider both Michael and Merrell Neal's arguments with regard to the <u>Franks</u> issue, because the arguments overlap and some were made jointly. Nevertheless, the Court continues to find that none of the evidence seized in the search of 637 Beaman Street should be suppressed in the trial of Defendant Merrell Neal, because he had no legitimate expectation of privacy in that house.

[6]The Defendants also contend that the application for the search warrant contains a false statement of fact because the application is dated May 4, 2011, and states that a blue Chevrolet Impala is parked in the driveway of 637 Beaman Avenue. The Defendants assert that the 2008 blue Chevrolet Impala was not purchased until after May 4, 2011. The Government responds that the May 4, 2011 date on the application is a clerical error and that both the search warrant affidavit and the search warrant state the correct date of May 21, 2011. The Court agrees with

omits the following material facts that bear upon the reliability of the confidential informant: (1) that Chicago FBI agents had determined that the confidential informant was not truthful regarding her reported contact with Merrell Neal, (2) that the confidential informant told Chicago FBI agents that she was scheduled to go on trips to Knoxville with Merrell Neal at certain times but these trips did not occur, and (3) that the confidential informant has a prior felony theft conviction. In support of their allegations, the Defendants offer emails and reports by FBI agents and portions of the grand jury testimony of the confidential informant. They request a <u>Franks</u> evidentiary hearing to prove their allegations of false statements and omissions.

The Government responds that the Defendants have failed to make a substantial preliminary showing that the affiant either knowingly or with reckless disregard for the truth included material false statements or omitted material information from the affidavit. The Government argues that the Defendants have failed to show that Agent Nocera had deceptive intent or that the allegations are material to probable cause. It asserts that the Defendants are not entitled to an evidentiary hearing in which they pierce the four corners of the affidavit and scrutinize the motivations of Agent Nocera.

Generally, in determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit." <u>United States v. Hatcher</u>, 473 F.2d 321, 323 (6th Cir. 1973); <u>see also</u> <u>Whiteley v. Warden</u>, 401 U.S. 560, 565 (1971). In reviewing the propriety of the search warrant, the Court considers "the evidence that the issuing magistrate had before him only 'to ensure that [he] ha[d] a substantial basis . . . for concluding that

---

the Government that the erroneous date in the search warrant application does not impact the validity of the search warrant. <u>See</u> <u>United States v. Henderson</u>, 471 F.3d 935, 937 (8th Cir. 2006) (holding that judge's failure to sign the search warrant application was a "clerical error" that did "not affect the validity of the warrant").

18

probable cause existed.'" <u>United States v. Jones</u>, 159 F.3d 969, 973 (6th Cir. 1998) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238-39 (1983)) (alterations in original). In other words, the Court does not look beyond the four corners of the affidavit in assessing whether it provides probable cause.

In <u>Franks v. Delaware</u>, 438 U.S. 154, 155, 164 (1978), the Supreme Court examined whether a defendant ever has the right, pursuant to the Fourth and Fourteenth Amendments, to contest the truthfulness of sworn statements of fact in a search warrant affidavit. Sworn affidavits in support of search warrants are, in the first instance, presumed to be valid. <u>Id.</u> at 171. Nevertheless, a defendant may attack the veracity of factual statements in the affidavit under certain limited circumstances:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

<u>Id.</u> at 155-56; <u>see also</u> <u>United States v. Bennett</u>, 905 F.2d 931, 934 (6th Cir. 1990). If the defendant makes this showing and is granted what has come to be known as a "<u>Franks</u> hearing," he or she must FFshow by a preponderance of the evidence that the affiant intentionally or recklessly included false statements, which are necessary to the probable cause finding, in the affidavit. <u>Franks</u>, 438 U.S. at 156; <u>Bennett</u>, 905 F.2d at 934. If the defendant successfully makes this showing, the evidence gained as a result of the search must be suppressed. <u>Franks</u>, 438 U.S. at 156; <u>Bennett</u>, 905 F.2d at 934.

19

*(1) False Statements*

The Defendants raise seven false statements that they content warrant a <u>Franks</u> hearing in this case. The Defendants first argue that affidavit provides false information as to the dates that the two previous trips to Knoxville occurred. The affidavit states that the two prior trips occurred on April 1, 2011 [Exh. 1, ¶7.b.], and April 9, 2011 [Exh. 1, ¶7.c.]. The Defendants point to the First Superseding Indictment [Doc. 28], filed on June 21, 2011, which charges them with possessing cocaine with intent to distribute on March 27, April 2, and May 21, 2011. The Defendants contend that these dates in the First Superseding Indictment reveal that the Government's position is that the prior trips occurred on March 27 and April 2, 2011, rather than April 1 and 9, 2011. Defendant Merrell Neal states that cellular tower records, obtained on July 19, 2011, and provided in discovery, reveal that he could not have been in Knoxville on April 1 or 9, 2011. Additionally, the Defendants argue that the confidential informant testified before a grand jury on May 24, 2011, that the first trip occurred around March 1 and the second trip also occurred in March. [Doc. 50, Exh. 4, pp. 6, 22][7]

The Defendants argue that these sources–the May 24, 2011 grand jury testimony by the confidential informant, the June 21, 2011 First Superseding Indictment, and the cell tower records obtained on July 19, 2011–show that Agent Nocera included false dates in the affidavit. The Court disagrees. First, the grand jury testimony of the confidential informant, the First Superseding Indictment, and the cell tower records were all gained after the search warrant was issued and executed. None of these sources show that Agent Nocera possessed any dates other than the ones

------

[7]In his motion, Defendant Merrell Neal also argues that an FBI report, dated May 9, 2011, states that the confidential informant said the prior trips occurred on March 25 and April 1. The Defendants did not provide this report as an exhibit to their motions, nor was it provided at the hearing. Accordingly, the Court must find this contention to be unsupported and insufficient to merit a <u>Franks</u> hearing.

stated in the affidavit at the time he provided the affidavit. Moreover, both the affidavit supporting the Criminal Complaint [Doc. 1, Exh. 1], filed on May 23, 2012, and the original Indictment [Doc. 14], filed on May 24, 2011, allege a drug conspiracy beginning on April 1, 2011, which is consistent with the dates of the two prior Knoxville trips in the search warrant affidavit. Thus, nothing about the differing dates in the grand jury testimony, the Superseding Indictment, or the cell tower records suggest that Agent Nocera knowingly or recklessly included false dates in the affidavit. Instead, the evidence before the Court suggests otherwise. At the hearing, the Government provided a May 3, 2011 email [Exh. 2] from FBI Agent Dannie Price in Chicago to Agent Nocera stating that the confidential informant reported that the two prior trips to Knoxville occurred on April 1 and 9, 2011.

Second, the Defendants contend that the affidavit provides false information on the reason the confidential informant gave for Merrell Neal wanting her to accompany him to Knoxville. The affidavit states

> CS1 was recently approached by Merrell Neal, who asked CS1 to ride with him in rental cars between Chicago and Knoxville. Merrell Neal wanted CS1 to ride with him because he believed that a couple traveling together would appear less suspicious to law enforcement. Merrell Neal offered to pay CS1 $500 simply for riding from Chicago to Knoxville, and back. CS1 agreed to make the trips with Merrell Neal.

[Exh. 1, ¶7.a.] The Defendants argue that the reason given in the affidavit–that Merrell Neal believed a couple traveling together would seem less suspicious to law enforcement–is false because the confidential informant subsequently testified before the grand jury that she believed Merrell Neal was traveling to Knoxville to visit a relative. [Doc. 50, Exh. 4, p.7] As an initial matter, the Court questions whether the confidential informant's grand jury testimony contradicts the statement attributed to her in the affidavit. While testifying before the grand jury on May 24, 2011, the

21

informant is asked whether she knew what was involved in traveling to Knoxville with Merrell Neal, and she responds that she believed it to be a pleasure trip for Merrell Neal to visit a relative and that she would be paid for simply riding along. [Doc. 50, Exh. 4, p.7-8] She testified that "once I got down here I realized what was going on." [Doc. 50, Exh. 4, p.7] The Court does not find this subsequent testimony to contradict the above quoted portion of the affidavit.[8]

More importantly, the Court finds that the confidential informant's testimony occurred after the issuance of the search warrant and, thus, could not have influenced the information that Agent Nocera put in the affidavit. Additionally, the Supreme Court stated unequivocally in <u>Franks</u> that the false statements relevant to a <u>Franks</u> inquiry were those of the affiant, not of an informant: "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." 438 U.S. at 171. Relying on <u>Franks</u>, the Sixth Circuit has likewise held that allegedly misleading statements by an informant to the affiant are not a basis for a <u>Franks</u> hearing when there is no evidence that the affiant relied on the informant's statements recklessly or knowing they were false. <u>United States v. Stuart</u>, 507 F.3d 391, 397 (6th Cir. 2007). Accordingly, the Court finds to the extent that it can be interpreted that the confidential informant gave two different reasons for accompanying Merrell Neal to Knoxville, this perceived contradiction in the *informant's statements* does not indicate that Agent Nocera provided a knowingly or recklessly false statement regarding the reason for the confidential informant's involvement in the affidavit.

Third, the Defendants argue that the affidavit falsely states that Merrell Neal carried a gun

---

[8]The Court notes that in her grand jury testimony, the confidential informant testified that she did not know how much Merrell Neal would pay her for making the trip. [Doc. 50, Exh. 4, p.7]

during the two prior trips to Knoxville. The affidavit alleges that the confidential informant "noticed that Merrell Neal took a handgun with him on these trips which he kept in the center consoles inside the passenger compartment of the rental cars." [Exh 1, ¶7.f.] The Defendants argue that this statement in the affidavit is contradicted by the confidential informant's grand jury testimony, in which she testified that Merrell Neal got rid of the gun in the console at her request on the first trip and that she did not see any guns in the car on the second trip. [Doc. 50, Exh. 4, pp. 9, 25] As discussed above, the Court finds that this alleged discrepancy relates to the statements of the informant, rather than the affiant, and that the contradictory statement was made after the issuance and execution of the search warrant. Accordingly, the Court finds the existence of discrepancies between the confidential informant's grand jury testimony and her statements to law enforcement included in the affidavit does not indicate that Agent Nocera provided a knowingly or recklessly false statement about the guns in the affidavit.

Fourth, the Defendants contend the affidavit falsely claims that the confidential informant positively identified the Beaman Street house from photographs. The affidavit states

> On May 4, 2011, Agents in Chicago showed CS1 photographs of the house located at 637 South Beaman Street, Knoxville, Tennessee, including the ones attached hereto as "Attachment A." CS1 identified the house in those photographs as the one she visited twice in April 2011. Agents initially showed the photographs to CS1 on May 3, 2011. CS1 did not immediately recognize the house in the photographs because she did not recall that the house had a front porch. On May 4, 2011, however, CS1 reflected on the photographs further and realized that she mistakenly believed that she had entered the house through the front door when, if [sic.] fact, she had entered the house through the side door visible on the photographs attached hereto as "Attachment A." CS1 also stated that Merrell Neal parked the car in the driveway on the Lay Avenue side of the house on both occasions in April 2011, so she assumed that the door she had entered from the driveway was the front door of the house.

[Exh. 1, ¶9] The Defendants contend that the affidavit's statement that the confidential informant positively identified the house on May 4, 2011, is false. They refer the Court to a FBI report [Doc. 50, Exh. 6] by Agent Dannie Price, dated May 17, 2011. The report summarizes a May 4, 2011 meeting between Agent Price, other Chicago FBI agents, and the confidential informant. The report states that the confidential informant reported:

> The photographs shown to [the confidential informant] by SA Price on May 3, 2011, of 637 Beaman Street could possibly be the Knoxville stash house. [The confidential informant] has only seen the residence in the dark and has only made entry through the door near the carport and never through the front door. The front door of the residence leads to the living room area and is blocked from the inside by a couch. The door on the side of the house by the carport leads to the kitchen.

[Doc. 50, Exh. 6, p.1][9] The Defendants argue that the May 17 FBI report reveals that the confidential informant did not identify the house, when the affidavit states that she did.

The Court finds that the language in the affidavit stating "CS1 identified the house in those photographs" when the report states that the informant said the house in the photographs "could possibly be the Knoxville stash house," while concerning to the Court, is not material to the probable cause finding. First, the affidavit accurately reflects that the informant had difficulty identifying the

_____

[9]In oral argument, counsel for Defendant Michael Neal also contended that the affidavit contained the following inconsistencies regarding the description of the house: The confidential informant stated the house number was 827 or 837, but it is actually 637; and the confidential informant described the house as being green, when it is not green but some part of it may be green. [Doc. 69, Trans. at 22] The Court finds that the affidavit reports the mistaken house number [Exh. 1, ¶7.e.] and relates that the informant described the house as green [Exh. 1, ¶7.c.]. The affidavit also gives the correct house number, states that the house has "a white and green painted exterior" [Exh. 1, ¶4], and that it has "green paint near the front door entrance[.]" [Exh. 1, ¶8.a.] Accordingly, the Court discerns no <u>Franks</u> issue with regard to these problems with the informant's identification of the house. The affiant fully disclosed these statements to the issuing judge in the affidavit, and the judge was able to weigh them in the probable cause analysis.

24

house from photographs and explains that she was disoriented about the side entry being the front of the house. Second, and more importantly, the remainder of the affidavit leaves no doubt that 637 Beaman Street is the correct house, as it is the house to which the informant and Merrell Neal are followed on May 21, 2011. [Exh. 1, ¶¶12-13] Accordingly, while the statement that the confidential informant identified the house may be too strong, at least when compared to the May 17, 2011 FBI report, exclusion of that statement does not alter the probable cause analysis.[10]

Fifth, the Defendants assert that the affidavit's statement of the amounts of cocaine Merrell Neal allegedly brought to Knoxville on the two prior trips is false. The affidavit states the confidential informant said that Merrell Neal brought "three one-kilogram 'bricks' of cocaine" to Knoxville on the first trip and "five kilograms of cocaine" on the second trip. [Exh. 1, ¶7.b. & d.]

---

[10]The Defendants argue that a deliberate, false statement by a Chicago FBI agent must be attributed to Agent Nocera, even if Agent Nocera did not know that the statement was false. The Government responds that while statements of other officers may form the basis of a Franks inquiry, the focus of the inquiry remains on the affiant's state of mind when preparing and submitting the affidavit, and the Defendants must show that the affiant also acted dishonestly by relying on the false information from other officers. The Supreme Court alluded to this issue in Franks, when, in explaining its ruling in another case, it stated that "police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." 438 U.S. at 164 n.6. The Defendants rely upon United States v. DeLeon, in which the Ninth Circuit held that "misstatements or omissions of government officials which are incorporated in an affidavit for a search warrant are grounds for a Franks hearing, even if the official at fault is not the affiant." 979 F.2d 761, 764 (9th Cir. 1992); see also United States v. Delgado, 121 F. Supp. 2d 631, 641 (E.D. Mich. 2000) (holding that "the Franks analysis applies not only to the affiant but must extend also to government and police officers who furnish erroneous information to the affiant as well"). To hold otherwise would "would permit government officials deliberately to keep from affiants or the court information material to the determination of probable cause and by such conduct avoid the necessity of a Franks hearing." DeLeon, 979 F.2d at 764. While the Court is inclined to agree with this statement of the law, in the instant case, there is no indication, nor does the Court infer from the mere fact that some contradictory information surfaced during the investigation, that the Chicago agents were deliberately dishonest or recklessly disregarded the truth. Moreover, the Court has found that any discrepancies were immaterial to the probable cause finding. Accordingly, the Court does not have to decide whether the Sixth Circuit would follow DeLeon.

The Defendants contend that the confidential informant's grand jury testimony, given three days after the issuance of the search warrant, states that Merrell Neal brought two kilograms of cocaine on the first trip and three kilograms of cocaine on the second trip. [Doc. 50, Exh. 4, pp. 12, 23] At the hearing, the Government presented three FBI reports by FBI Agent Dannie Price. The report dated May 3, 2011, [Exh. 3] relates that the confidential informant said five kilograms of cocaine were delivered during both previous trips. In reports dated May 11, 2011 [Exh. 5] and May 12, 2011 [Exh. 6], Agent Price reported that the confidential informant stated that three kilograms of cocaine were delivered on the first trip to Knoxville and five kilograms of cocaine on the second trip. The Defendants argue that these discrepancies in the amounts of cocaine show that FBI agents recklessly disregarded the truth in reporting the amount of cocaine delivered in the prior trips in the affidavit.

The Court finds that the differences in the amounts of cocaine do not constitute the "substantial preliminary showing that a false statement . . . was included by the affiant," as required by Franks, because the discrepancy is not material. 438 U.S. at 155. First, as discussed above, allegations that the confidential informant made false statements are unavailing for a Franks inquiry. See Stuart, 507 F.3d at 397. Secondly, the Court finds that to the extent there is a discrepancy in the amount of cocaine transported in the first trip as stated in the May 3, 2011 FBI report (five kilograms) and the affidavit and the other two reports (three kilograms), the Court finds the discrepancy to be immaterial. None of the FBI reports suggest that the first trip to Knoxville did not occur, that Merrell Neal did not bring cocaine on the first trip, or that there were not multiple kilograms of cocaine. The fact that one of three reports varies by two kilograms (and is higher) from what is stated in the affidavit is not material to the probable cause determination. Finally, the Court does not infer from the bare fact that there is a two kilogram variance between the May 3 report and

26

the affidavit that the Chicago FBI agents deliberately or recklessly reported the wrong amount to Agent Nocera or that Agent Nocera deliberately or recklessly included the wrong amount in the affidavit.

Sixth, the Defendants allege that the affidavit's account of the amount of money gained from the sale of drugs in the two prior trips is false. The affidavit states that the confidential informant related that, with regard to the first trip, "Merrell Neal took some of the money generated by the cocaine sales with him back to Chicago. Michael Neal kept the rest of the money." [Exh. 1, ¶7.b.] With regard to the second trip, the affidavit states the confidential informant said that she "was able to determine that Merrell Neal segregated $12,000 from the drug proceeds for himself, and packaged up $168,000 to take to his cocaine supplier, presumably in Chicago." [Exh. 1, ¶7.d.] The Defendants argue that this amount is false because during her grand jury testimony, the confidential informant estimated that Merrell Neal bundled up between $80,000 and $100,000 on the first trip and approximately the same amount, if not more, on the second trip. [Doc. 50, Exh. 4, pp. 17, 28] Again, the Court finds that a possible misstatement by the confidential informant occurring after the issuance of the search warrant is not relevant to the Franks analysis. See Stuart, 507 F.3d at 397.

Finally, the Defendants argue that the affiant falsely claimed that the confidential informant is "highly credible." The Defendants argue that the affiant could not make this statement because he had never interviewed the confidential informant himself, had not clarified the dates of the prior trips by examining telephone records, did not record any of the telephone conversations between Merrell Neal and the confidential informant, did not apply for wiretaps on the telephones of the Defendants, and because the confidential informant has prior convictions, including a theft conviction. At the motion hearing, counsel for Defendant Michael Neal argued that the Chicago FBI

27

agents should have known there was a problem with the informant's credibility when she told them on May 3, 2011, that Merrell Neal delivered five kilograms of cocaine on the first trip, and then told them on May 11 and 12, 2011, that Merrell Neal delivered three kilograms of cocaine. [Doc. 69, Trans. at 80]  The Defendants contend that by not following up on that inconsistency, the FBI agents exhibited a reckless disregard for the truth, which is imputed to Agent Nocera, who relied upon their reports.

The affidavit states

> I recently received information from FBI agents in Chicago, Illinois, regarding a multi-kilogram cocaine pipeline operating between Chicago, Illinois, and Knoxville, Tennessee.  Specifically, the Chicago agents have developed and are utilizing a confidential human source (hereafter "CS1") to further this investigation.  CS1 has provided what I believe to be truthful and accurate information concerning the people who have been transporting multiple kilograms of cocaine from Chicago to Knoxville in recent weeks.  As will be detailed in subsequent paragraphs herein, CS1's information is detailed and has been independently corroborated in a number of ways.  As a consequence, I believe CS1 to be highly credible.

[Exh. 1, ¶6]  The Court finds that Agent Nocera's opinion that he believes the confidential informant to be highly credible is not a basis upon which an issuing judge may make a probable cause finding. A reviewing judge cannot rely upon the conclusory statements of the affiant that a source is reliable. United States v. Gunter, 551 F.3d 472, 480 (6th Cir. 2008).  Instead, the affidavit must permit the issuing judge "'to independently determine probable cause; his action cannot be a mere ratification of the conclusions of others.'"  See id. at 480 (citing Gates, 462 U.S. at 239).  Accordingly, Agent Nocera's belief that the informant is credible, in and of itself, is not material to the probable cause finding.

The Court has examined the Defendant's contentions regarding false statements in the

28

affidavit and finds that the inconsistencies and discrepancies raised are largely immaterial to the probable cause determination. Moreover, the Defendants have failed to make a substantial preliminary showing that Agent Nocera, or the Chicago FBI agents on whose information Agent Nocera relied, submitted the information in the affidavit with reckless disregard for the truth. A reckless disregard for the truth means that the affiant "entertained serious doubts about the truth of his allegations." United States v. Bonds, 12 F.3d 540, 569 (6th Cir. 1993). Such reckless disregard cannot be shown by pointing to instances of "negligence or innocent mistake[.]" Franks, 348 U.S. at 171. Moreover, the fact that the Defendants can point to subsequent statements by the confidential informant that are inconsistent with statements attributed to her in the affidavit does not impugn Agent Nocera's credibility and begs the question as to whether the statements in the affidavit or the subsequent grand jury testimony were incorrect. Accordingly, the Court finds that the Defendants have failed to make the substantial preliminary showing that would entitle them to a Franks hearing with regard to the alleged false statements.

*(2) Material Omissions*

Material omissions may also merit a Franks hearing in certain circumstances: "Although material omissions are not immune from inquiry under Franks, . . . an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." United States v. Adkins, 107 F.3d 1213, 1217 (6th Cir. 1997). Thus, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, Franks is inapplicable to

29

the omission of disputed facts." Mays v. City of Dayton, 134 F.3d 809, 816 (6th Cir.), cert. denied, 524 U.S. 942 (1998). "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." Adkins, 107 F.3d at 1217.

The Defendants contend that the affidavit omits the following material facts that bear upon the reliability of the confidential informant: (1) that Chicago FBI agents had determined that the confidential informant was not truthful regarding her reported contact with Merrell Neal, (2) that the confidential informant told Chicago FBI agents that she was scheduled to go on trips to Knoxville with Merrell Neal at certain times but these trips did not occur, and (3) that the confidential informant has a prior felony theft conviction. The Court examines each of these alleged omissions.

First, the Defendants argue that Agent Nocera and the Chicago FBI Agents did or should have questioned the informant's credibility, yet the agents' belief that the informant was untruthful was omitted from the affidavit. The Defendants direct the Court to a May 13, 2011 email [Doc. 50, Exh. 5, p.2] from Chicago FBI Agent Dannie Price to Agent Scott Davis stating, "Just looked at [the confidential informant's] telephone records. She received a call 30 minutes after my text to her on the 10th. Doesn't look like she's been telling the truth." This email was in response to another email earlier that day, which relates that the informant said she had not heard from Neal. The Defendants argue the fact that the Chicago FBI agents doubted the confidential source's credibility should have been included in the affidavit.

The Government responds that this May 13 email is taken out of context. It provided the Court an FBI report [Exh. 13] by Agent Price, dated July 1, 2011, which explains that on May 10,

30

2011, he and Agent Davis met with the informant to give her a new cellular telephone. According to the report, at the meeting, the informant stated that she had received a blocked telephone call from Merrell Neal after she had spoken with Price to arrange their meeting. Agent Price then directed the informant to call Neal and give him her new telephone number, which she did but Neal did not answer. Agent Price explained that he had "initially misread [the informant's] telephone records pertinent to May 10, 2011, and believed that [the informant] had made an unreported call to NEAL" and, thus, Price had sent the email in question to Agent Davis to tell him. [Exh. 13, p.1] The report states "further review of the telephone records and sources reporting documents relevant to May 10, 2011 revealed that SA Price had incorrectly interpreted the telephone records and that his initial beliefs were incorrect. A second review showed no unreported contact between [the informant] and NEAL on May 10, 2011." [Exh. 13, p.1][11]

The Court finds that Agent Price's initial questioning of the veracity of the confidential source in the May 13 email does not amount to a material omission in the search warrant affidavit. The agents were properly testing the information of a new informant as they proceeded with the investigation. The fact that one investigating agent expressed skepticism at one point in the investigation does not mean that the Chicago agents did not trust the informant or that Agent Nocera wrongfully stated that she was credible in the affidavit. This is particularly true in light of the fact that Agent Price later discovered that he had mistakenly interpreted the telephone records and that the informant was being honest about her contacts with Merrell Neal. Accordingly, the Court finds

---

[11]The report [Exh. 13, p.2] also states that Agent Price reviewed the informant's Sprint Nextel Corporation telephone records and discovered that the informant had an outgoing call to Neal at 1:18 p.m., rather than the incoming call from Neal from a blocked number as she had reported to him on May 10, 2011. The report states that Agent Price informed AUSA Tracy Stone of this discrepancy.

that the failure to include a reference to the May 13 email in the search warrant affidavit is not material to the probable cause finding.

Second, the Defendants argue that Agent Nocera should have included in the search warrant affidavit that the confidential informant told Chicago FBI agents that she was scheduled to go on a third trip to Knoxville with Merrell Neal around May 4, 2011, but this trip did not occur. The Defendants provide an email from FBI Agent Scott Holladay to other FBI agents on May 4, 2011, stating that agents would be conducting surveillance that afternoon of a new confidential source traveling to Knoxville, Tennessee, with a Gangster Disciple "target," who would be transporting five kilograms of cocaine. [Doc. 46, Exh. 3] The Defendants provide a second email, dated May 6, 2011, from FBI Agent Scott Davis to other FBI agents, stating: "We have still not heard from the target regarding the trip. We continue to think that it is just a matter of time before it goes. If and when we get the call from the source, I will reach out to everyone and see who it [sic.] is still good to go. Thanks for your patience." [Doc. 46, Exh. 4] In a responding email, dated May 9, 2011, FBI Agent Dannie Price replies, "Thanks for being patient with the potential Knoxville trip. Currently, it appears that the source['s] telephone has been cut off. Ellen and I will attempt to make contact with the source later today to see if we can fix the problem. So far there has been no reported contact between [the informant] and the Target." The Defendants argue that this information should have been included in the affidavit because it reflects upon the informant's credibility.

The Court finds that this series of emails does not reveal that the informant gave the agents false information about scheduled trips that did not occur but, instead, reveals that Merrell Neal had not yet initiated the third trip. The third trip to Knoxville did not occur until May 20, 2011. [Exh. 1, ¶12] The affidavit states:

According to CS1, Merrell Neal has been planning a third trip to Knoxville and has requested that CS1 go with him again. Based on the previous trips to Knoxville described herein above, Merrell Neal provides very little advance notice to CS1 regarding the trips. Basically, Merrell Neal simply calls CS1 by telephone and instructs her that he will pick her up a short time later.

[Exh. 1, ¶11] The Court finds the additional fact that the Chicago FBI had been anticipating the third trip to Knoxville as early as May 4, 2011, is not material to the probable cause finding.

Finally, the Defendants contend that the affiant's failure to reveal that the confidential source has prior convictions, including a felony theft conviction, is a material omission in the affidavit that bears upon the informant's reliability. The Defendants provide a Certified Statement of Conviction from the Circuit Court of Cook County, Illinois, stating that in February 2001, a person, whom the Defendants contend is the confidential informant, was convicted of retail theft and possession of cannabis. [Doc. 50, Exh. 8] The Court finds that the omission of this information from the affidavit is also not material. The affidavit reveals that the confidential informant admitted to participating in criminal activity with Michael and Merrell Neal. The affidavit also states that the informant provided information for the purpose of benefitting a third party with existing criminal charges. Thus, the Court finds that the affidavit provides information about the informant's involvement with the criminal element, her potential bias in providing information to the FBI, and problems with her credibility. The Court had this information in front of it when making the probable cause determination. Accordingly, the Court finds that the omission of the informant's prior convictions is not material.

In the present case, the Court finds that the Defendants have failed to make the requisite preliminary showing that the search warrant contains either material false statements or material

33

omissions, which would permit the Court to delve behind the face of the affidavit. The Defendants' request for a <u>Franks</u> hearing should be denied.

### D. Good Faith

Finally, the Defendants argue that the <u>Leon</u> "good faith" exception to the exclusionary rule should not apply in this case because Agent Nocera, acting with reckless disregard for the truth, mislead the issuing judge with false statements and material omissions in the affidavit. "The general remedy for a Fourth Amendment violation is that evidence obtained due to the unconstitutional search or seizure is inadmissible." <u>United States v. Dice</u>, 200 F.3d 978, 983 (6th Cir. 2000); <u>see also Mapp v. Ohio</u>, 367 U.S. 643, 654 (1961) (holding that "all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court"); <u>Weeks v. United States</u>, 232 U.S. 383, 398-99 (1914) (establishing the exclusionary rule as the remedy for violations of the Fourth Amendment). However, in <u>United States v. Leon</u>, the Supreme Court recognized that the deterrent effect of the judicially created exclusionary rule did not extend to situations in which an officer in objective good faith obtains a search warrant from a judge and acts within the scope of that warrant. 468 U.S. 897, 920 (1984). In the present case, the Court has found that probable cause existed to issue the search warrant for 637 Beaman Street and that the Defendants have failed to make a substantial preliminary showing that the affidavit contained material false statements or omissions. Because the Court has found no reason to suppress evidence seized in the May 21, 2011 search of the Beaman Street house, the Court does not reach the question of whether the officers executed the search warrant in good faith.

# IV. CONCLUSION

After carefully considering the evidence, the parties' filings and arguments, and the relevant legal authorities, the Court finds no basis to suppress the evidence seized in the search of Defendant Merrell Neal's Beaman Street residence. For the reasons set forth herein, it is **RECOMMENDED** that Defendant Michael Neal's Motion to Suppress [**Doc. 45**] and Defendant Merrell Neal's Motion to Suppress Evidence Obtained as a Result of Insufficient Search Warrant [**Doc. 49**] and Motion to Suppress Evidence and for a Franks Hearing [**Doc. 50**], be **DENIED**.[12]

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[12]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

35