# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>       Plaintiff,<br><br>v.<br><br>MERRELL NEAL, MICHAEL NEAL,<br>and BRANDON SCOTT HARRIS,<br>       Defendants. | )<br>)<br>)    **No. 3:11-cr-69**<br>)    **(Phillips/Guyton)**<br>)<br>)<br>)<br>) |

## ORDER

### I.    Introduction

This matter comes before the Court on Defendants Merrell Neal and Michael Neal's objections [Docs. 91, 92] to the Report and Recommendation filed by Magistrate Judge H. Bruce Guyton on April 13, 2012 [Doc. 89]. Magistrate Judge Guyton recommended that the Court deny Defendant Michael Neal's Motion to Suppress [Doc. 45] and Defendant Merrell Neal's Motion to Suppress Evidence Obtained as a Result of Insufficient Search Warrant [Doc. 49] and Motion to Suppress Evidence and for a Franks Hearing [Doc. 50].

For the reasons contained herein, Defendants' objections [Docs. 90, 91] to the Report and Recommendation are **OVERRULED**; the Report and Recommendation [Doc. 89] is **ACCEPTED**; and Defendants' various motions [Docs. 45, 49, 50] are **DENIED**.

### II.    Background

The Court must conduct a *de novo* review of those portions of the Report and Recommendation ("R&R") to which objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). The

proceedings in this case and the positions of the parties are well detailed in the R&R. [Doc. 89, at 1-4.] Defendant does not object to the R&R's summary thereof, and it therefore is adopted and incorporated herein by reference.

The R&R concludes that Defendant Merrell Neal did not have standing to contest the search warrant of Michael Neal's residence, because (a) the residence did not appear to be Michael Neal's primary residence; and (b) Merrell Neal came to his brother's house for "purely commercial purposes." [Doc. 89, 5-9.] Second, the R&R finds that the information from the confidential informant in this case was reliable, firsthand, and sufficiently corroborated to support a finding of probable cause. *Id.* at 9-17. Third, the R&R finds that a *Franks* hearing is not warranted in this case because (a) any inconsistencies or discrepancies contained in the affidavit in support of the search warrant were largely immaterial to the probable cause determination; (b) Defendants failed to show that the affiant, Agent Nocera, submitted the information in the affidavit with reckless disregard for the truth; and (c) Defendant failed to show that the search warrant contained either material false statements or material omissions. *Id.* at 17-34. Because of its findings regarding probable cause and the absence and/or immateriality of allegedly false statements and omissions, the R&R did not reach the question of whether the officers executed the search warrant in good faith. *Id.* at 34.

Defendants object as follows. First, they state that the Magistrate Judge had insufficient evidence to support his finding that Merrell Neal had no standing to contest the search warrant of Michael Neal's residence. [Doc. 91, at 1-3.] Second, they contend that there is no basis for a determination of probable cause for the issuance of the search warrant, based on the alleged untested reliability of the confidential informant and the minimal corroboration of facts. *Id.* at 3-8; [Doc. 92, at 1-2.] They point to several discrepancies between the R&R and the confidential

-2-

informant's grand jury testimony, and allege that the investigating agent in this case "did not so much corroborate facts as he did correct mistakes." [Doc. 92, at 2.] Finally, Defendants maintain that a *Franks* hearing should be held to test the truthfulness of the information that formed the basis of the search warrant affidavit. [Doc. 91, at 8]; [Doc. 92, at 2-4.]

## III.     Analysis

### A.     Standing of Merrell Neal and Brandon Harris

The Court finds that the affidavit in support of the search warrant did not contain material inaccuracies or omissions and provided probable cause for the search warrant's issuance. Accordingly, the Court does not find it necessary to determine whether Defendants Merrell Neal and Brandon Harris have standing to challenge the validity of the search warrant in this case.

### B.     Probable Cause

The Fourth Amendment provides, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In determining whether probable cause exists to support a search warrant, a magistrate judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[S]o long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

-3-

An issuing judge's determination that probable cause exists is entitled to "great deference," *Gates*, 462 U.S. at 236, and the duty of a reviewing court is simply to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed, *id.* at 238-39. Such review "is limited to the information contained in the four corners of the affidavit." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010) (citing *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)). Importantly, the sufficiency of a search warrant affidavit is judged based on "the totality of the circumstances, rather than line-by-line scrutiny." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (citing *Gates*, 462 U.S. at 238). In adopting this totality-of-the-circumstances approach, the Supreme Court reasoned that affidavits for search warrants "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

When the majority of the information in a search warrant affidavit comes from a confidential informant, reviewing courts "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances." *United States v. Dyer*, 580 F.3d 386, 389 (6th Cir. 2009) (quoting *United States v. Helton*, 314 F. 3d 812, 819 (6th Cir. 2003)). These considerations, while "highly relevant" to a finding of probable cause, are not "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230. Factors taken into account in assessing a confidential informant's reliability and veracity include, but are not limited to, whether the informant provided reliable information in the past, whether investigating officers had prior knowledge of the informant, the informant's motivation in disclosing

-4-

the information, whether the informant's identity was made known to the magistrate judge or the investigating officers, the detail and specificity of the information provided, and the informant's proximity to and familiarity with the events about which he or she provides information. As noted by Defendants in their objections to the R&R, Judge Moore's dissent in *Dyer* warns of situations in which a "previously untested and unknown informant comes to the police with drug charges hanging like the Sword of Damocles over the informant's head, claims to have witnessed drug activity in another's home, and describes innocent facts such as the home's location and design and the alleged drug dealer's physical appearance." 580 F.3d at 394. Judge Moore warns that such testimony is insufficient to support a finding of probable cause because "[s]uch innocent factual information . . . is readily available to anyone who has ever entered an individual's home (or looked through the window) and does nothing to verify a claim of drug activity." *Id.*

"[E]ven where law enforcement does not name an informant in the affidavit or receives information from an informant whose reliability is not established, probable cause may exist 'when there is some independent corroboration by the police of the informant's information.'" *United States v. Gregory*, 311 Fed. App'x 848, 856 (6th Cir. 2009) (quoting *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)). *See also United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (noting that, in the absence of *any* indicia of a confidential informant's reliability, the affidavit must contain "substantial independent police corroboration"). It is well established that corroboration of nonincriminating facts can be sufficient to establish probable cause. *Gates*, 462 U.S. at 243-44. In *Gates*, Justice Rehnquist explained:

> "Because an informant is right about some things, he is more probably right about other facts," *Spinelli*[ *v. United States*, 393 U.S. 410, 427 (1969)] (White, J., concurring). . . . This may well not be the type of "reliability" or "veracity" necessary to satisfy some views of the "veracity prong" of *Spinelli*, but we think it

suffices for the practical, common-sense judgment called for in making a probable cause determination. It is enough, for purposes of assessing probable cause, that "corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay." *Jones*, *supra*, 362 U.S. at 269, 271, 80 S.Ct., at 735, 736.

*Id.* at 244-45. In footnote 13, Justice Rehnquist elaborated:

The Illinois Supreme Court thought that the verification of details contained in the anonymous letter in this case amounted only to "the corroboration of innocent activity," and that this was insufficient to support a finding of probable cause. We are inclined to agree, however, with the observation of Justice Moran in his dissenting opinion that "In this case, just as in *Draper*[ *v. United States*, 538 U.S. 307, 309 (1959)], seemingly innocent activity became suspicious in the light of the initial tip." And it bears noting that all of the corroborating detail established in *Draper*, supra, was of entirely innocent activity—a fact later pointed out by the Court in both *Jones v. United States*, 362 U.S. 257, 269-270, 80 S.Ct. 725, 735-36, 4 L.Ed.2d 697 (1960), and *Ker v. California*, 374 U.S. 23, 36, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726 (1963).

This is perfectly reasonable. As discussed previously, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands. We think the Illinois court attempted a too rigid classification of the types of conduct that may be relied upon in seeking to demonstrate probable cause. See *Brown v. Texas*, 443 U.S. 47, 52 n.2, 99 S.Ct. 2637, 2641, n.2, 61 L.Ed.2d 357 (1979). In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.

*Id.* at 243 n.13.

The Court finds that the magistrate judge issuing the search warrant in this case had a "substantial basis for . . . conclud[ing]" that probable cause existed to issue a search warrant for the house at 637 South Beaman Street. Before considering the investigating officers' corroboration of the confidential informant's information, the court notes that several other factors surrounding her testimony indicate that she was truthful and had an adequate basis of knowledge. The

-6-

confidential informant had first-hand knowledge regarding Defendant Merrell Neal's trips from Chicago to the house at 637 South Beaman Street, because she accompanied Merrell Neal on two of the trips. *See United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) (noting that "a detailed description of what the informant observed first-hand" is "indicia of the informant's reliability"). The informant described said trips with specificity, including Merrell Neal's motive in bringing her along ("he believed that a couple traveling together would appear less suspicious to law enforcement"), the $500 compensation she received for accompanying him, the rental status of the car used, Merrell Neal's use of a GPS system and entry therein of an address on Beaman Street in Knoxville, Tennessee, the presence of a handgun in the center console during her first trip with Merrell Neal, Merrell Neal's retrieval of a duffle bag from the trunk of the car, the timing of their departures from Chicago and arrivals in Knoxville, the exterior and interior of Michael Neal's house ("a single-story green house with a carport and 'junk' in the backyard . . . [that] did not appear to be lived in because it had few furnishing and little food"), the manner in which Merrell Neal and she entered the house, her meetings and interaction with Michael Neal, the fact that Michael Neal had a light green Infiniti sedan at the house, and the telephone number for Michael Neal that she was given by Merrell Neal. [Doc. 49, Attach. 2, ¶ 7.] She acknowledged that she thought the true address of the house was different from that entered by Merrell Neal into his GPS system. *Id.* The confidential informant also described in detail the illicit drug activities that took place inside the house, including the breaking down of the cocaine "bricks" with razor blades, the weighing of the cocaine with electronic scales, the repackaging of the cocaine in plastic baggies, the cooking, blending, and repackaging of a portion of the cocaine as crack cocaine, and the arrival of "six to eight" customers at the house to buy the cocaine and crack cocaine. *Id.* The extensive, detailed, and

first-hand knowledge the confidential informant acquired as a participant in the first two trips to Knoxville is palpably distinguishable from the situation described by Judge Moore in his dissent in *United States v. Dyer*, in which an informant merely "describes innocent facts[,] such as the home's location and design and the alleged drug dealer's physical appearance[,] . . . readily available to anyone . . . ." 580 F.3d at 389.

　　　　Further, the confidential informant met with law enforcement officers in this case to identify the house at 637 South Beaman Street. The R&R was correct in concluding that her reliability is therefore supported by the fact that the investigating agents knew her identity, even though it was unknown to the issuing judge. *See United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005) ("The statements of an informant . . . , whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source."). The Court also notes that, though the confidential informant was acting primarily to benefit a third party with existing criminal charges, she admitted to participating in criminal activity with Merrell Neal by accompanying him on two trips to process and deal cocaine. *See, e.g.*, *United States v. Harris*, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search."); *Armour v. Salisbury*, 492 F.2d 1032, 1035 (6th Cir. 1974) ("An admission against penal interest . . . is a significant, and sometimes conclusive, reason for crediting the statements of an informant.").

　　　　In addition to these indicia of reliability, veracity, and adequate basis of knowledge, the issuing judge also had independent police corroboration of some of the confidential informant's information, upon which to form a "substantial basis" for finding probable cause to issue a search

-8-

warrant of the house on Beaman Street. The affiant located a house on Beaman Street "closely matching" that described by the confidential informant, in that it had green paint, a carport, and a collapsed shed in the backyard. [Doc. 49, Attach. 2, ¶ 8.] The affiant learned that the utilities of this house were in Michael Neal's name, and that the telephone number given to the confidential informant to contact Michael Neal, and the telephone number given to the utilities company to contact Michael Neal, matched Michael Neal's actual telephone number. *Id.* The affiant also determined through the Tennessee Department of Safety that Michael Neal owned a green Infiniti Q45 sedan like that described by the confidential informant. *Id.* Agents drove by Michael Neal's home address and observed such a car, with plates matching those registered to Michael Neal by the Department of Safety. *Id.* The affiant also confirmed that Defendants Michael and Merrell Neal had felony cocaine convictions. *Id.* Finally, the affiant confirmed that there is no "800 Beaman Street" address, and that entering such an address into a "typical GPS system will likely produce directors to a location in the close vicinity of 637 South Beaman Street, Knoxville, Tennessee." *Id.*

Furthermore, officers corroborated the confidential informant's information regarding her two trips to Knoxville with Merrell Neal in April of 2011 by closely monitoring the house at 637 South Beaman Street and by electronically tracking her as she traveled from Chicago to Beaman Street on a third trip on May 20, 2011. Between May 4 and May 20, 2011, FBI officials "routinely" observed such Michael Neal's green Infiniti Q45 sedan parked at 637 South Beaman Street, and also observed an "inordinate amount of visitors" to the home, which they believed indicated that the house was being used for drug trafficking. *Id.* ¶ 10. On May 20, 2011, the informant told FBI agents that she was on the road to Knoxville with Merrell Neal, and reported they were traveling in a blue Chevrolet Impala. *Id.* ¶ 12. The agents tracked her as she traveled from Chicago to Clinton,

Tennessee, where the agents located a blue Chevrolet Impala that had a license plate registered to Defendant Merrell Neal. *Id.* Officers observed the car arriving at 637 South Beaman Street, and watched as a driver and passenger exited the car, retrieved a bag from the trunk,[1] and entered the house. *Id.* ¶ 13. While Defendants are correct that the investigating officers did not obtain "receipts or cell phone records" to corroborate the confidential informant's account of her first two trips to Knoxville, the Court finds that the officers' observations on the night of May 20, 2011, and the similarity of the events of that evening with those described by the confidential informant as taking place during the prior two trips, corroborated the information she had previously provided.

Though the facts corroborated by the investigating officers were "innocent" insofar as the police did not observe first hand Defendants committing any crimes, the Court agrees with the R&R that (1) in the context of a probable cause inquiry, corroboration of "innocent" or non-criminal acts can be sufficient to establish a confidential informant's reliability and veracity; and (2) the suspicion attached the many corroborated innocent acts in this case, under the totality of the circumstances, was sufficient to establish a "substantial basis" for the issuing judge's finding of probable cause. Further, the fact that the confidential informant made several mistakes during her provision of information—specifically regarding the address of the house on Beaman Street, the description of the door she used to enter the house, and whether the house was entirely green or just had green paint near the door entrance—and took several attempts to identify a photograph of the

---

[1] As noted by Defendant Michael Neal in his Objections, the confidential informant's Grand Jury testimony indicates that she did not see the duffle bag removed from the trunk on the night of the arrest. However, the investigating officers witnessed the driver's removal of a duffle bag from the trunk, which served to corroborate the events that allegedly took place during the confidential informant's prior two trips to the house on Beaman Street.

-10-

house[2] does not defeat the Court's finding that the totality of circumstances indicates that there was probable cause to issue the search warrant. Finally, the Court is unpersuaded by Defendants' reliance on *United States v. Higgins*, 557 F.3d at 389-90, as the two facts upon which the court's decision in *Higgins* was based—namely that (1) the affiant did not attest to the confidential informant's reliability in the search warrant affidavit; and (2) the confidential informant did not allege that he had ever been inside the apartment, or seen any drugs or other evidence inside the apartment, that the officers sought to search —are not present in this case.

The Court will overrule Defendants' objections to the R&R's conclusion that the information from the confidential informant supports a probable cause finding.

### C.     Necessity of a *Franks* Hearing

In *Delaware v. Franks*, 438 U.S. 154 (1978), the Supreme Court set forth the limited circumstances under which a defendant may contest the veracity of factual statements in a search warrant affidavit. The Court held that "where a defendant makes a 'substantial preliminary showing' that a false statement was made knowingly, recklessly, or with an intentional disregard for the truth, is included by the affiant in a search warrant affidavit, and that the false statement was necessary to the issuing magistrate's finding of probable cause, then the defendant is entitled to a hearing." *United States v. Kelley*, 459 Fed. App'x 527, *4 (6th Cir. 2012) (table) (quoting *Franks*, 438 U.S. at 155-56). "This showing must be 'accompanied by an offer of proof . . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily

---

[2] The Court notes that several of the confidential informant's mistakes were correlated: the fact that Merrell Neal parked his car in the driveway on the Lay Avenue—rather than the Beaman Street—side of the house allegedly caused the informant to mistakenly identify the door she took to enter the house as the front door, and to have difficulty in identifying the photographs of the house because she did not recall seeing a front porch. [Doc. 49, Attach. 2, ¶ 9.]

explained . . . .'" *Id.* (citing *Franks*, 438 U.S. at 171). "Reckless disregard for the truth" means that the affiant "'entertained serious doubts as to the truth of his statements or had obvious reason to doubt the accuracy of the information he reported.'" *Peet v. City of Detroit*, 502 F.3d 557, 571 n.3 (6th Cir. 2007) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). Search warrant affidavits are given a presumption of validity, and "negligence or innocent mistake are insufficient" to overcome this presumption. *Franks*, 438 U.S. at 171.

The term "false statement" includes a material omission for purposes of *Franks*, *United States v. Speer*, 419 Fed. App'x 562, 571 (6th Cir. 2011) (quoting *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008)), but the Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement," *Fowler*, 535 F.3d at 415 n.2. The court has explained the reasoning underlying this "higher bar": "Allegations of material omission are held to a higher standard because of the 'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter[s] that might, if included, have redounded to defendant's benefit." *Id.* at 415-16.

### 1. False Statements

In their motion for a *Franks* hearing, Defendants identify the following allegedly false statements: (1) the dates on which the prior trips to Knoxville occurred; (2) the reason why the confidential informant accompanied Merrell Neal to Knoxville; (3) that Merrell Neal kept a handgun in his car during both prior trips to Knoxville; (4) that the confidential informant positively identified the Beaman Street house from photographs; (5) the amount of cocaine Merrell Neal brought to Knoxville on the prior trips; (6) the amount of money gained from the sale of drugs in

-12-

the prior trips; and (7) the statement that the confidential informant provided "truthful and accurate" information and was "highly credible." The R&R examines in detail Defendants' allegations as to the first six allegedly false statements, and finds either (1) no evidence that Agent Nocera, the affiant, knew of the potential falsity of such statements at the time he provided the affidavit; or (2) that the apparent discrepancies were immaterial to the magistrate judge's finding of probable cause. [Doc. 89, at 20-27.] It also finds that, where the affiant knew of potential discrepancies or holes in the confidential informant's knowledge, he disclosed such in the affidavit. *Id.* Defendants have not objected to the Magistrate Judge's findings in this regard; rather, Defendants object solely to his findings regarding the veracity of the affiant's statement that the confidential informant was "highly credible" and that her information was "truthful and accurate." Defendants contend that the affiant could not "with a straight face" make such statements, as he never interviewed the confidential informant, did not corroborate the dates of the prior Knoxville trips, did not record any telephone conversations between Merrell Neal and the informant, did not apply for wiretaps on Defendants' telephones, and did not include in the affidavit the fact that the informant had a prior felony theft conviction.

Defendants' objection is not well taken, as the Court finds that the affiant had substantial basis to have stated in the search warrant affidavit that he believed the confidential informant to have provided "truthful and accurate" information and to be "highly credible." [Doc. 49, Attach. 2, ¶ 6.] As discussed *supra* in Part III.B, though they did not corroborate the confidential informant's testimony in the matter urged by Defendant, the affiant and other investigating officers in Chicago and Knoxville corroborated much of her testimony through independent research, through surveillance of the house at 637 South Beaman Street, and finally through the tracking and

-13-

observation of the informant and Defendant Merrell Neal during their trip to the house on May 20, 2011. And as discussed extensively in a portion of the R&R not objected to by Defendants, the inconsistencies in the confidential informant's testimony, on which Defendants aver the officers should have "follow[ed] up," either emerged after the filing of the search warrant affidavit or were immaterial to the magistrate judge's finding of probable cause. [Doc. 89, at 20-27.] Defendants are not entitled to a *Franks* hearing because they failed to make the requisite showing that the affiant's statements regarding the confidential informant's trustworthiness and veracity were made with a "reckless disregard for truth."

### 2.    Material Omissions

Defendants identified the following omissions as the basis for their request for a *Franks* hearing: (1) that the Chicago agents determined that the confidential informant was not truthful regarding her contact with Merrell Neal; (2) that the confidential informant told the Chicago agents that she was scheduled to go on trips to Knoxville with Merrell Neal at certain times but these trips did not occur; and (3) that the confidential informant has a prior felony theft conviction.

Defendants are correct that "the *Franks* analysis applies not only to the affiant but must extend also to government and police officers who furnish erroneous information to the affiant as well." *United States v. Delgado*, 121 F. Supp. 2d 631, 641 (E.D. Mich. 2000). *See also United States v. DeLeon*, 979 F.2d 761 (9th Cir. 1992)) ("A deliberate or reckless omission by a government official who is not the affiant can be the basis for a *Franks* suppression."). However, the burden remains with the defendants to show by a preponderance of the evidence that said non-affiant officers acted with intentional, knowing, or reckless (i.e. "serious doubts . . . or obvious reason to doubt the accuracy of the information") disregard for the truth. *Peet*, 502 F.3d at 571, n.2. And the

-14-

Court reiterates that this burden is heightened when defendants allege that material omissions—rather than false statements—were made. *See Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir.), *cert. denied*, 524 U.S. 942 (1998) ("[E]xcept in the very rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is *critical* to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts.") (emphasis added).

The Court agrees with Magistrate Judge Guyton that the omission from the affidavit of the fact that one of the Chicago agents expressed skepticism in mid-May regarding the veracity of the confidential informant was not material to the magistrate judge's finding of probable cause, and that there is no evidence that such omission was made with the requisite intentional, knowing, or reckless disregard for the truth. Communications between the Chicago officers during their initial interviews with the confidential informant and prior to their corroboration of several of the details from her story do not indicate that, several weeks later at the time the search warrant affidavit was filed, the officers had "serious doubts . . . or obvious reason to doubt the accuracy of the [confidential informant's] information." *Peet*, 502 F.3d at 571, n.2. Nor does the Court find that the officers made a material omission by failing to include in the affidavit the fact that the confidential informant was scheduled to go on a trip to Knoxville around May 4, 2011— *after* the first two trips but prior to the May 20, 2011 trip—but that said trip did not occur. Defendants fail to show how such omission is at all relevant to the informant's veracity or reliability.

While the Court notes that the fact that the confidential informant had a prior felony theft conviction is relevant to her credibility, relevant case law dictates that, where an affiant is forthright as to the informant's potential motives or biases, and where there is independent police

-15-

corroboration of portions of the informant's information, failure to disclose a prior conviction is not a "material omission" for purposes of a *Franks* hearing.[3] In this case, the affiant stated in the affidavit that the confidential informant admitted to participating in criminal activity with the Neal brothers. He also stated that the informant's "stated motivation [in providing the information] was to benefit a third party who has existing criminal charges." [Doc. 49, Attach. 2, ¶ 7.] Finally, the affiant described in detail the independent corroboration of the informant's information that was performed by officers in Chicago and Knoxville. *Id.* ¶¶ 8-13. The Court thus concludes that, when considered in conjunction with all of the information provided in the affidavit about the confidential informant's background and potential biases, as well as the corroboration of her testimony, the omission of the fact of her prior felony theft conviction was not material.

---

[3] *See, e.g.*, *United States v. Daniels*, 323 Fed. App'x 201, 209-10 (4th Cir. 2009) (finding that the affidavit's failure to mention that the confidential informant had been found engaging in drug trafficking activity on three occasions in the days prior to, and including, the day the search was sought, and that he attempted to flee from law enforcement during a prior arrest, was not "material in the *Franks* context"); *United States v. Pruett*, 501 F.3d 976, 983 (8th Cir. 2007), *vacated on other grounds by* 522 U.S. 1241 (2008) (finding that the affiant did not "intentionally or recklessly omit[] information about [the informant's] criminal history in an attempt to mislead the magistrate," in part because the court "d[id] not believe that the information would have changed the magistrate's probable-cause analysis had it been included in the affidavit"); *United States v. Nelson*, 450 F.3d 1201, 1214 (10th Cir. 2006) (finding that, though the affidavit omitted the fact that the confidential informant had a past felony conviction, "[g]iven the level of independent corroboration . . . the addition of negative information about the confidential informant's credibility or veracity. . . does nothing to defeat a showing of probable cause"); *United States v. Ofshe*, 817 F.2d 1508, 1513 (11th Cir. 1987) ("[T]he omission of the informant's criminal convictions, when considered with all the information contained with the application, does not invalidate the warrant."). *But see United States v. Simmons*, 771 F. Supp. 2d 908 (N.D. Ill. 2011) (finding that officer acted with reckless disregard for the truth in omitting from the affidavit the fact that the informant was a first-time, untested informant; had been arrested the previous day; was in custody when he gave statement and swore complaint; and was affiliated with a gang and had a criminal background).

-16-

Finally, in addition to finding that the alleged omissions in the search warrant affidavit are not "material," the Court also finds no evidence that the affiant or other investigating officers had the requisite intent to warrant a *Franks* hearing. *See United States v. Khami*, 362 Fed. App'x 501, 506 (6th Cir. 2010) (holding that the defendants' allegations of intentional misleading of the magistrate were "simply too conclusory to constitute the substantial showing required by the Sixth Circuit"). Because Defendants failed to make a substantial preliminary showing that the affiant made material omissions in his search warrant affidavit, and made such omissions "knowingly and intentionally, or with reckless disregard for the truth," *Franks*, 438 U.S. at 155, Defendant's objections as to the R&R's denial of its motion for a *Franks* hearing will be overruled.

### D.    Applicability of the Good Faith Exception to the Exclusionary Rule

Because the Court finds that the affidavit in support of the search warrant did not contain material inaccuracies or omissions and provided probable cause for the search warrant's issuance, the Court does not reach the question of whether the exclusionary rule should not apply in this case because the officers acted in good faith in seeking and executing the search warrant.

### IV.    Conclusion

For the reasons contained herein, Defendants' objections [Docs. 90, 91] to the Report and Recommendation are **OVERRULED**; the Report and Recommendation [Doc. 89] is **ACCEPTED**; and Defendants' various motions [Docs. 45, 49, 50] are **DENIED**.

-17-

**IT IS SO ORDERED**.

**ENTER:**

_____ s/ Thomas W. Phillips _____
United States District Judge